Slip Op. 07-132

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HARTFORD FIRE INSURANCE CO.,<br><br>             Plaintiff,<br><br>     v.<br><br>UNITED STATES,<br><br>             Defendant. | Before: Pogue, Judge<br><br>Court No. 07-00101 |

Decided: Aug. 29, 2007

**OPINION**

[Defendant's motion to dismiss for lack of subject matter jurisdiction granted.]

Barnes, Richardson & Colburn,(Daniel F. Shapiro, Eric W. Lander, and Sandra L. Friedman)for the plaintiff.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael J. Dierberg), Edward Greenwald, Bureau of Customs and Border Protection, of counsel, for the defendant.

**Pogue, Judge**: Faced with a demand by the United States Bureau of Customs and Border Protection ("Customs") for the payment of antidumping duties pursuant to Plaintiff's bond guaranteeing the payment of such duties, Plaintiff, in this action, asks the court to declare its bond unenforceable. Pursuant to USCIT R. 12(b)(1), Defendant moves to dismiss, claiming a lack of subject matter jurisdiction because of Plaintiff's failure to utilize or exhaust its administrative protest remedies. For the reasons stated herein,

Ct. No. 07-00101 Page 2

the court grants Defendant's motion.

**Background**

This action involves three entries of merchandise imported into the United States by Brother Packaging Inc. The merchandise is subject to antidumping duties. Plaintiff, Hartford Fire Insurance Company ("Plaintiff" or "Hartford") guaranteed a basic importation and entry bond for payment of duties, taxes and charges on these entries.

In its three-count complaint, Plaintiff now asks the court to declare its bond unenforceable, claiming that the Continued Dumping and Subsidy Offset Act of 2000, Pub. L. No. 106-387, § 1003, 114 Stat. 1549, 1623 (2000) codified at 19 U.S.C. § 1675c[1] ("CDSOA" or "Byrd Amendment"), has rendered its bond inapplicable and invalid.

The Byrd Amendment altered the government's use of antidumping and countervailing duties ("ADD" and "CVD" respectively) collected pursuant to ADD and CVD orders on subject merchandise. Customs continues, as it did before the Byrd Amendment, to collect antidumping and countervailing duties, but, pursuant to the Byrd Amendment, rather than depositing those duties into the general treasury of the United States, Customs now deposits all duties collected into "special accounts" established within the U.S.

---

[1] Except where otherwise noted, all references to the United States Code ("U.S.C.") are to the 2000 edition.

Treasury for each antidumping and countervailing duty order. 19 U.S.C. § 1675c(e); 19 C.F.R. § 159.64.[2],[3] In addition, each year, Customs distributes all monies contained in those special accounts, plus interest, on a _pro rata_ basis, to "affected domestic producers," i.e., domestic companies (who continue to produce the subject merchandise under the ADD or CVD order) and worker groups that supported the petition for the antidumping or countervailing duty order. The funds distributed, known as the "continued dumping and subsidy offset," 19 U.S.C. § 1675c(a), 19 C.F.R. § 159.61(a) ("Byrd Distributions"), are allocated based on "qualifying expenditures," i.e., certain enumerated business expenses such as manufacturing facilities, equipment, input materials, health benefits for employees, and "[w]orking capital or other funds needed to maintain production," paid by affected domestic producers. 19 U.S.C. §§ 1675c(b)(4); 1675c(d)(2)-(3); 19 C.F.R. § 159.61(c).[4]

---

[2] Except where otherwise noted, all references the Code of Federal Regulations ("C.F.R.") are to the 2007 edition.

[3] Customs deposits monies into special accounts only after the entries of the goods have been liquidated, _i.e._, final duties have been collected and deposited. Prior to liquidation, Customs deposits all monies collected, _i.e._, cash deposits, in clearing accounts. See 19 C.F.R. § 159.64(a). When goods are liquidated, the money in the clearing accounts is transferred to special accounts. See 19 C.F.R. § 159.64(b).

[4] On February 8, 2006, President Bush signed the Deficit Reduction Act of 2005 repealing the Byrd Amendment. See Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 7601(b), 120 Stat. 4, 154
(continued...)

Plaintiff claims that, under contract and surety common law, it is not obligated by the terms of its bond to pay what amounts to a subsidy to the U.S. domestic industry. Rather, Plaintiff claims, the Byrd Amendment constitutes a material alteration of its bond that increased Plaintiff's risk of loss, which material alteration discharges Plaintiff from its obligation under the bond. Plaintiff asserts that the court has jurisdiction of what Plaintiff styles a common law dispute pursuant to 28 U.S.C. § 1581(i).[5]

---

[4](...continued)
(2006). As provided by this repeal: "[a]ll duties on entries of goods made and filed before October 1, 2007, that would, but for [the repeal], be distributed" will continue to be distributed under the Byrd Amendment, 19 U.S.C. § 1675c. Id.

[5]In relevant part, 28 U.S.C. § 1581(i) provides:
> (i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section . . ., the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--
>
> (1) revenue from imports or tonnage;
>
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.
>                                                   (continued...)

Defendant moves to dismiss because Plaintiff has filed no protest in response to Customs' demand for payment of duties guaranteed by Plaintiff's bond. Defendant notes that Customs' demand that Plaintiff pay antidumping duties and interest is a "charge" within the plain meaning of 19 U.S.C. § 1514(a)[6] and that jurisdiction for a challenge to such a charge must be established pursuant to 28 U.S.C. § 1581(a).[7]

Citing a long line of decisions from the Court of Appeals for the Federal Circuit for the proposition that, when jurisdiction under subsection (a) of § 1581 is or could have been available, jurisdiction pursuant to section 1581(i) may not be invoked unless relief under section 1581(a) would be "manifestly inadequate," see Am. Signature Inc. v. United States, 31 CIT ___, 477 Fed. Supp. 2d 1281, 1287 (2007), Defendant argues that Plaintiff may not, in this matter, invoke jurisdiction under section 1581(i), but must first utilize its protest remedy and obtain jurisdiction pursuant to section 1581(a). Defendant also relies on 28 U.S.C. § 2637(d) which states that "the Court of International Trade shall, where

---

[5](...continued)
28 U.S.C. § 1581(i).

[6] In relevant part, 19 U.S.C. § 1514(a) provides that "decisions of the Customs Service . . . as to . . . charges or exactions... shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section . . . ."

[7] In relevant part, 28 U.S.C. § 1581(a) provides that the court "shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part . . . ."

Ct. No. 07-00101                                                    Page 6

appropriate, require the exhaustion of administrative remedies."[8] Finally, Defendant notes that under the rule announced in the court's decision in <u>American Motorists Ins. Co. v. United States</u>, 14 CIT 298, 737 F. Supp. 648 (1990), Plaintiff's complaint is

---

[8] 28 U.S.C. § 2637 provides:

> (a) A civil action contesting the denial of a protest under section 515 of the Tariff Act of 1930 may be commenced in the Court of International Trade only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced, except that a surety's obligation to pay such liquidated duties, charges, or exactions is limited to the sum of any bond related to each entry included in the denied protest.
>
> (b) A civil action contesting the denial of a petition under section 516 of the Tariff Act of 1930 may be commenced in the Court of International Trade only by a person who has first exhausted the procedures set forth in such section.
>
> (c) A civil action described in section 1581(h) of this title may be commenced in the Court of International Trade prior to the exhaustion of administrative remedies if the person commencing the action makes the demonstration required by such section.
>
> (d) In any civil action not specified in this section, the Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.

28 U.S.C. § 2637.

It is somewhat unclear why the government is relying on 28 U.S.C. § 2637(d) in support of its USCIT R. 12(b)(1) motion, as section 2637(d) is discretionary, not jurisdictional. <u>See</u> <u>Carpenter Tech. Corp. v. United States</u>, 30 CIT ___,  452 F.Supp.2d 1344, 1345, (2006) ("<u>Carpenter I</u>")(explaining that the exhaustion requirement is not jurisdictional); <u>see</u> <u>also</u> <u>Carpenter Tech. Corp. v. United States</u>, 30 CIT ___, 464 F.Supp.2d 1347 (CIT 2006)("<u>Carpenter II</u>").

untimely because a protest denying liability under an import bond must be filed within the 180-day period of the Customs decision challenged thereby. 19 U.S.C. § 1514(c) (2004). Nor has Plaintiff paid the duties required by 28 U.S.C. § 2637(a) as a condition for assertion of protest jurisdiction.

Plaintiff concedes that Customs' demand for payment under the bond is a charge. Plaintiff argues, however, that it "is not challenging the charge itself." Rather, Plaintiff claims that the issue is whether the surety bond is valid, or whether the bond covers the charge.

Plaintiff argues that its contract and surety claims are not claims identified as protestable pursuant to 19 U.S.C. § 1514(a). Consequently, Plaintiff claims, "[l]ike the plaintiff in Old Republic," it had only the options of (1) not paying the duties demanded, and waiting until Customs brought an action against it, at which time it could assert its contract claim, or (2) proceeding with its claim under 1581(i). See, Old Republic Ins. Co. v. United States, 10 CIT 589, 599, 645 F. Supp. 943, 952 (1986). It chose "proactively to seek the court's assistance" by invoking 1581(i) jurisdiction.

## Jurisdiction and Standard of Review

A jurisdictional challenge to the court's consideration of Plaintiff's action raises a threshold inquiry. Ruhrgas AG v.

Ct. No. 07-00101                                                  Page 8

Marathon Oil Co., 526 U.S. 574, 577-78 (1999); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-102 (1998). The court must therefore address Defendant's motion to dismiss for lack of subject matter jurisdiction and make an initial determination that jurisdiction exists before it may reach the merits of Plaintiff's claim.

In deciding a USCIT R. 12 (b)(1) motion that does not challenge the factual basis for the complainant's allegations, the court assumes "all factual allegations [contained in the complaint] to be true and [draws] all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995). Nonetheless, as the Federal Circuit explained in Norsk Hydro Canada, Inc. v. United States, the "'mere recitation of a basis for jurisdiction . . . cannot be controlling[;]'" rather, analysis of jurisdiction requires determination of the "'true nature of the action . . . .'" Norsk Hydro Canada, Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006)(quoting Williams v. Sec'y of Navy, 787 F.2d 552, 557 (Fed. Cir. 1986)).

Having determined the true nature of the action, the court then applies the provisions of the various paragraphs of section 1581 to determine the appropriate treatment of a plaintiff's claim. See Parkdale Intern. Ltd. v. United States, 31 CIT ___, 491 F. Supp. 2d 1262 (2007)("Parkdale I"); see also Parkdale Int'l. Ltd. v. United States, Slip Op. 07-122, 31 CIT___ (Aug. 8,

2007)("Parkdale II"). In Parkdale I, the court recently reviewed the meaning of the Federal Circuit's "manifest inadequacy" jurisprudence for articulating the scope of the court's jurisdiction under Section 1581(i). The court noted that in the harbor maintenance tax ("HMT") litigation, the Federal Circuit recognized that a party may assert § 1581(i) jurisdiction even where jurisdiction under § 1581(a) could have been exercised. Cf. U.S. Shoe Corp. v. United States, 114 F.3d 1564, 1570 (Fed. Cir. 1997), aff'd, 523 U.S. 360 (1998) with Swisher Int'l., Inc. v. United States, 205 F.3d 1358, 1369 (Fed. Cir. 2000). The court concluded that "where the core of a dispute is within § 1581(i), i.e., it relates to a general issue of administration and enforcement policy as to the matters listed in § 1581(i)(1)-(3), § 1581(i) should function according to its terms, unless it is clear that another provision of § 1581 applies." Parkdale I, 31 CIT at __, 491 F. Supp. 2d at 1268 (emphasis omitted).

The "manifest inadequacy" rubric was also recently discussed in Abitibi Consol., Inc. v. United States, 30 CIT ___,___ 437 F. Supp. 2d 1352, 1357 (2006) (noting that Section 702 of the Administrative Procedure Act (which provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review", 5 U.S.C. § 704 (2000)) "is mirrored in the court's residual jurisdiction case law, which . . . prescribes that section

1581(i) supplies jurisdiction only if a remedy under another section of 1581 is unavailable or manifestly inadequate.") In Abitibi, the court declined to accept jurisdiction over interlocutory agency determinations made in an antidumping proceeding where a remedy under subsection 1581(c) was available, adequate and reviewable.

## Discussion

Plaintiff's complaint in this action seeks to challenge Customs' demand for payment of antidumping duties. At its core, Plaintiff's complaint is a challenge to a Customs' "charge" that is protestable pursuant to section 1581(a). Thus, using the test articulated by the court in Parkdale I, section 1581(a) "applies." Moreover, section 1581(a) was also an available, adequate and reviewable avenue for Plaintiff's assertion of the court's jurisdiction over its claim.[9]

Plaintiff's argument that its claim is a defense to Customs' charge, rather than a dispute of the charge itself, does not persuade. Customs' charge required that Plaintiff make payment under its bond; Plaintiff objects, and thus the true nature of its complaint is to avoid making the requested payment.

---

[9] Plaintiff does not contend that it was unaware of the legal basis for its claim or of its protest remedy at the time Customs demanded payment under its bond. Cf. St. Paul Fire & Marine Ins. v. United States, 959 F.2d 960, 963-4 (Fed. Cir. 1992).

The court's decision in Old Republic, upon which Plaintiff relies, is consistent with this result. In Old Republic, the court permitted a surety's contract challenge to the collection of duties to proceed under section 1581(i) where the claims could not have been made under section 1581(a) because, despite Plaintiff's protest and payment of the duties involved, Customs had legitimately extended the time for liquidation of the goods at issue. Consequently, the Old Republic court assumed that section 1581(a) jurisdiction was not available. Old Republic, 10 CIT at 597, 645 F. Supp. at 951.

Also, unlike the plaintiff in Old Republic, Plaintiff here has failed to utilize its administrative protest remedy. See Woodford v. Ngo, ___ U.S. ___, 126 S. Ct. 2378, 2385 (2006)(citing United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952) ("[A]s a general rule [] courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); see also, Am. Air Parcel Forwarding Co. v. United States, 718 F.2d 1546, 1549 (Fed. Cir. 1983) ("[w]here a litigant has access to [the Court of International Trade] under traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this avenue of approach complying with all the relevant prerequisites thereto. It cannot circumvent the prerequisites of 1581(a) by invoking jurisdiction

Ct. No. 07-00101                                                 Page 12

under 1581(i) . . . ." (quoting <u>Am. Air Parcel Forwarding Co. v. United States</u>, 5 CIT 8, 10, 150, 557 F. Supp. 605, 607 (1983) with approval))(citations omitted).

In the case at issue here, Plaintiff's failure to utilize the administrative protest remedy deprived Customs of the opportunity to conduct a timely consideration of its authority to prescribe the conditions for importation bonds, in the context of its Byrd Amendment functions, and to address Plaintiff's claim at the administrative level.  Importantly, Plaintiff's failure to invoke section 1581(a) also deprived the court of a clear and timely path for review.

Finally, though not relevant here, to the extent that Plaintiff invokes equitable considerations, arguing that it should be rewarded for "proactively" bringing its action to court, we note that, while the court is not divested of jurisdiction by the liquidation of the entries at issue, <u>see</u> <u>Shinyei Corp. of America. v. United States</u>, 355 F.3d 1297, 1310 (Fed. Cir. 2004), the court will not reward a party who sleeps on its rights. <u>Cf</u>. <u>Mitsubishi Elecs. Am., Inc. v. United States</u>, 18 CIT  167, 180, 848 F.Supp. 193, 203 (1994) (holding that "failure to seek injunctive relief against liquidation before commencing [an] action . . . precludes [the] Court from exercising jurisdiction under 28 U.S.C. § 1581(i)"), <u>aff'd</u> on alternative grounds*, 44 F.3d 973, 977 (Fed. Cir. 1994); <u>see</u> <u>also</u> <u>Mukand Int'l., Ltd. v. United States</u>, 29

CIT___,___, 412 F. Supp. 2d 1312, 1318-9 (2005).

## Conclusion

Accordingly, Defendant's motion will be granted, and Plaintiff's complaint is hereby DISMISSED. Judgment will be entered for Defendant.

It is so ORDERED.

/s/ Donald C. Pogue
Donald C. Pogue, Judge

Dated: Aug. 29, 2007
       New York, New York

Slip Op. 07-132

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HARTFORD FIRE INSURANCE CO.,<br><br>             Plaintiff,<br><br>        v.<br><br>UNITED STATES,<br><br>             Defendant. | Before: Pogue, Judge<br>Court No. 07-00101 |

### JUDGMENT

This action having been duly submitted for decision, and this court, after due deliberation having rendered a decision herein; now, in conformity with that decision, it is hereby

ORDERED that Plaintiff's complaint is dismissed.


Dated: New York, New York
       Aug. 29, 2007

                                           /S/Donald C. Pogue
                                           Donald C. Pogue, Judge

# NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble
      Clerk of the Court

Date: _____    By: _____
                                                                     Deputy Clerk